IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TIMOTHY AARON BAXTER,  )
                       )
        Petitioner,    )
                       )
v.                     )          No. 1:18-cv-01007-STA-jay
                       )
GRADY PERRY,           )
                       )
        Respondent.    )

---

ORDER DENYING § 2254 PETITION,
DENYING A CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

---

Petitioner Timothy Aaron Baxter has filed a *pro se* habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  For the following reasons, the Petition is **DENIED**.

## BACKGROUND

In December 2011, the Madison County, Tennessee, grand jury charged Baxter with failure to appear for a June 13, 2011, court appearance in his aggravated assault case, in violation of Tenn. Code Ann. 39-16-609.[1]  (ECF No. 26-1 at 4-6.)  At the jury trial, the "evidence showed that the defendant was charged with aggravated assault, that at [his] [May 9, 2011] arraignment he had been appointed counsel, and that he was on bond prior to the scheduled June 13, 2011 court appearance."  *State v. Baxter*, No. W2012-02555-CCA-R3CD, 2014 WL 29102, at *1

---

[1]  Petitioner was also charged with the same offense relating to his case involving simple possession of marijuana, but that charge was dismissed.  *See Baxter v. State*, No. W2016-00563-CCA-R3-PC, 2017 WL 3822903, at *2 (Tenn. Crim. App. Aug. 31, 2017)

(Tenn. Crim. App. Jan. 3, 2014).  Circuit Court Judge Roy Morgan presided over both the arraignment on May 9 and the June 13 appearance.  *Id.*

Judge Morgan's administrative assistant and his court reporter, as well as the assistant district attorney general, testified that they were present at both court proceedings.  *Id.*  "Generally, the witnesses remembered the defendant and recognized him at trial."  *Id.*  They recounted "that [he] appeared on May 9 but did not appear on June 13, and that after counsel was appointed on May 9 [Judge Morgan] instructed [him] to return to court on June 13, 2011."  *Id.*  It was established that, at the arraignment, "[t]he circuit court clerk made court calendars available to the public by placing a supply at the front desk of the clerk's office."  *Id.*

A transcript of the arraignment was introduced into evidence.  *Id.*  "The transcript, as read in court by the reporter, showed that the defendant was sworn, that the court appointed the public defender to represent him, that counsel entered a not guilty plea for the defendant, and that counsel suggested June 13, 2011, as the next court date."  *Id.*  The transcript further revealed that Judge Morgan "instructed the defendant to '[b]e back here then and keep in contact with your attorney.'"  *Id.* (alteration in original).

The transcript of the June 13 proceeding was "admitted . . . into evidence over the defendant's objection that it contained hearsay statements."  *Id.* at *2.  The transcript reflected that, consistent with his practice, Judge Morgan began the proceeding at 8:00 a.m.  *Id.*  The judge called Baxter's case, "and when the defendant did not answer, the judge said, 'I'm going to hold that one aside, then.'"  *Id.*  "After conducting some other court business, the judge called the defendant's case again, and when he did not respond, the judge said, '[C]apias issued.... It's nine-fifteen. No show. Bond forfeiture commence. That concludes the arraignment list.'"  *Id.* (alteration in original).  Defense counsel requested that she be allowed "the opportunity to call

the defendant, stating, 'I expected him to be here today.'" *Id.* Judge Morgan responded "'I don't mind you trying to call him. He needs to get here. We'll note a capias. He's dealt with us before. He knows the timing.'" *Id.*

Baxter testified that he was present on May 9 at the arraignment before Judge Morgan. *Id.* He stated "that, after the court appointed the public defender to represent him, the judge told him to step aside." *Id.* Appointed counsel then "'pulled [him] aside and [sat him] down' and elicited 'a couple minutes worth' of contact information from him." *Id.* He insisted that "he had no further communication from the judge" and that he did not hear the judge set a return court date. *Id.* He testified that he met with his attorney at her office on June 10, 2011. *Id.* He "maintained that he had never before missed a court date and that he intended to contest the aggravated assault charge." *Id.* "On cross-examination, [he] testified that he did not know he was obliged to appear in court on June 13 because he was 'sitting at a table, talking with the lady from the public defender's office.'" *Id.* "He denied that he was standing at the podium when the judge communicated the next court date, opining that the judge 'might have given the court date to the public defender but it wasn't to me.'" *Id.* "He stated that he believed his counsel would inform him of his next appearance date." *Id.*

On August 9, 2012, the jury returned a guilty verdict. (ECF No. 26-1 at 65.) Baxter was sentenced to six years' imprisonment at sixty percent. (*Id.*) "On appeal, [he] challenge[d] the sufficiency of the evidence, the admission of hearsay evidence, the use of prior convictions to impeach [him] as a witness, and the failure to suppress his pretrial statements recorded in a transcript of an earlier court appearance." *Baxter*, 2014 WL 29102, at *1. The Tennessee Court of Criminal Appeals ("TCCA") affirmed. *Id.*

On September 2, 2014, Petitioner filed a state habeas corpus petition.  (ECF No. 26-14 at 3-43.)  On appeal from the trial court's denial of the petition, the TCCA remanded the case to be heard as a post-conviction petition.  *See Baxter v. State*, No. W2014-02325-CCA-R3-HC, 2015 WL 5813374, at *2 (Tenn. Crim. App. Oct. 5, 2015).

On January 15, 2015, Petitioner filed a *pro se* petition for post-conviction relief.  (ECF No. 26-20 at 3-50.)  The post-conviction trial court "consolidated" the post-conviction petition with Baxter's habeas corpus petition.  (ECF No. 26-21 at 17.)  Following an evidentiary hearing, the court denied relief.  (*Id.* at 15-20.)  The TCCA affirmed the judgement of the post-conviction trial court on August 31, 2017.  *Baxter*, 2017 WL 3822903, at *1, 7.

## DISCUSSION

Baxter filed the Petition on October 23, 2017.  He asserts that the evidence was insufficient to support his conviction (Claim 1), there was "pervasive government misconduct, secretive, selective, vindictive," and that he was denied a preliminary hearing (Claim 2), the trial court "abused its discretion by allowing admission of hearsay evidence violating *Crawford v. Washington* (Claim 3), and trial counsel rendered ineffective assistance by "fail[ing] to subpoena witnesses and evidence for trial" (Claim 4A), exercise peremptory strikes (Claim 4B), object to the prosecution's case (Claim 4C), object to discriminatory enforcement (Claim 4D), and "contest the false narrative portrayed by the prosecution" (Claim 4E).  (ECF No. 1 at 5-10.)

Respondent, Grady Perry, filed the state-court record (ECF No. 26) and his Response to the Petition (ECF No. 27).  He argues that the claims are, variously, without merit, not well-pleaded, or procedurally defaulted.  Petitioner filed a Reply, in which he insists that he is entitled to relief.  (ECF No. 29.)  The parties also submitted supplemental briefs as to Claim 3.  (ECF No. 43, 45, 46.)

## I.     Legal Standards

### A.  Federal Habeas Review

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case."  *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first

instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent

6

of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted is he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Id.* at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

A petitioner may also overcome his procedural defaults by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.

**B. Sufficiency of the Evidence**

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319. *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). *Jackson*'s evidence-sufficiency standard may be met with circumstantial evidence. *See Desert Palace, Inc., v. Costa*, 539 U.S. 9, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or "based on an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d)(1)-(2), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

### C. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate

two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options[.]" Strickland, 466 U.S. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

A claim of attorney-ineffective-assistance must be supported with specific factual allegations. *Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012). "Merely conclusory allegations . . . are insufficient to state a constitutional claim." *Id.*; *see also* Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts* (a § 2254 petition must "state the facts supporting each ground").

## II.    Claim 1

Petitioner asserts that the evidence was insufficient to convict him of felony failure to appear. He exhausted the issue in the state courts by litigating it—albeit unsuccessfully—on direct appeal. *See Baxter*, 2014 WL 29102, at *1. Respondent maintains that the TCCA's rejection of the claim meets AEDPA's deferential standards. The argument is well-taken.

As relevant here, Baxter "was charged with a violation of Tennessee Code Annotated section 39–16–609, which in pertinent part provides that '[i]t is unlawful for any person to knowingly fail to appear as directed by a lawful authority if the person . . . [h]as been lawfully released from custody, with or without bail, on condition of subsequent appearance at an official proceeding or penal institution at a specified time or place[.]'" *Baxter*, 2014 WL 29102, at *3 (quoting Tenn. Code Ann. § 39-16-609(a)). The statute further provides that "[i]t is a defense to

prosecution under this section that . . . [t]he person had a reasonable excuse for failure to appear at the specified time and place." Tenn. Code Ann. § 39-16-609(b).

Under Tennessee case law, "the requisite mental element expressed in the proscriptive statute is knowing." *Baxter*, 204 WL 29102 at *3. "Establishing the mental state of knowing 'will usually depend on inference and circumstantial evidence.'" *Id.* (quoting *State v. Brown,* 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995)).

On direct appeal, Petitioner argued the evidence was insufficient because "[t]he State failed to present any evidence regarding the 'knowingly' element of the statute." (*Id.* at 14.) The TCCA denied the claim. *Baxter*, 2014 WL 29102, at *3. In rejecting the argument, the TCCA articulated and applied *Jackson*'s evidence-sufficiency standards. *Baxter*, 2014 WL 29102, at *3. Upon review of the proofs submitted at trial, the court determined that the evidence, when viewed in the light most favorable to the State, showed that

> the defendant was in court on May 9, 2011, that he appeared before the judge at the podium, that he was appointed counsel, that he at some point provided contact information to the assistant public defender, that his counsel requested that the case be set for June 13, 2011, and that the court set the case on that date at 8:00 a.m. The factual issue presented is whether the defendant was occupied by the "lady" from the public defender's office when the announcement was made so that he did not hear the trial judge. Although the defendant testified that he was so occupied and that he did not hear the date announcement, the jury was free to reject this testimony. Witnesses testified to the practice of having an arraigned defendant stand at the podium with counsel when the instruction to reappear is made, but we note that no witness recalled actually seeing the defendant at the podium during this time. That aside, the transcript of the May 9 arraignment includes Judge Morgan's agreement to counsel's suggestion of June 13 as the next court date, followed by the judge's statement to "[b]e back here then and keep in contact with your attorney." This comment was necessarily directed to the defendant. In our view, the jury had a basis for inferring that the defendant knew to return to court on June 13, 2011.

*Id.* The TCCA therefore concluded that the evidence was sufficient to support the conviction. *Id.*

As indicated above, the TCCA correctly identified *Jackson*'s standards and applied them to the facts adduced at trial. Therefore, the decision is not contrary to clearly established Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Petitioner has also failed to establish that the appellate court's conclusion, and the factual determinations on which it is based, are unreasonable. To begin with, he does not identify any clear and convincing evidence to undermine the factual findings, including the jury's implicit determination that his testimony was not credible. *See McMullan v. Booker*, 761 F.3d 662, 671 (6th Cir. 2014) (credibility determinations are factual findings for purposes of AEDPA review) (citing *Thompson v. Keohane,* 516 U.S. 99, 110 (1995)). Secondly, the evidence, when viewed in the light most favorable to the State, gives rise to the reasonable inference that Petitioner knew he was to return to court on June 13. The jury was tasked with assessing the credibility of the witnesses and resolving all competing inferences arising from the evidence. Consistent with *Jackson*'s commands, the TCCA gave "full play" to the jury's role. *Jackson*, 443 U.S. at 319. The court's conclusion that the evidence was sufficient to sustain the convictions is, therefore, not an unreasonable application of *Jackson*'s standards. Claim 1 is **DENIED**.

## III.   Claim 2

Petitioner asserts that there was "pervasive government misconduct" at his trial and that he was denied a preliminary hearing in violation of the Fourteenth Amendment. (ECF No. 1 at 6.) Respondent argues that the claim is procedurally defaulted. The Court agrees.

Baxter litigated the government's alleged misconduct and lack of a preliminary hearing at the post-conviction evidentiary hearing.  (ECF No. 26-20 at 5; ECF No. 26-23 at 32, 50, 90.)  He did not, however, pursue the issues on appeal (ECF No. 26-24 at 13), and the time for presenting them to the state courts has passed.  The claim is therefore procedurally defaulted.

Baxter asserts that the default should be excused because his post-conviction "counsel was ineffective in his representation on PC appeal to the TCCA[.]"  (ECF No. 1 at 7.)  As discussed earlier, *Martinez* holds that post-conviction counsel's ineffective assistance in failing to raise a "substantial" trial-counsel-ineffective-assistance claim may excuse the procedural default.  *See Martinez*, 566 U.S. at 14.  However, *Martinez* does not apply to excuse a procedural default that occurs on post-conviction appeal.  *Young v. Westbrooks*, 702 F. App'x 255, 267 (6th Cir. 2017) (citing *Coleman*, 501 U.S. at 754).   In addition, a post-conviction attorney's ineffective assistance will only excuse the procedural default of a trial-counsel-ineffective-assistance claim.  *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 716 (6th Cir. 2015).  Claim 2, which alleges prosecutorial misconduct and failure to afford Petitioner a preliminary hearing, is not such a claim.

Because Claim 2 is procedurally defaulted and Petitioner has not shown cause and prejudice to excuse the default, the claim is **DISMISSED**.

## IV.   Claim 3

 Petitioner asserts that his Sixth Amendment right to confront witnesses was violated when the trial court admitted into evidence Judge Morgan's and defense counsel's transcribed statements from the June 13 hearing.[2]  The statements are the judge's remark "He's dealt with us before.  He knows the timing," and defense counsel's representation to the judge that she

---

[2]  As will be discussed *infra*, the scope of Claim 3 is somewhat unclear.  Nevertheless, the Court has liberally and broadly construed the claim.

"expected him to be here today."  In support of the claim he invokes *Crawford v. Washington*, 541 U.S. 36 (2004), which sets the standard for the admission of prior testimony from an unavailable witness, and *Chapman v. California*, 386 U.S. 18 (1967), which requires a harmless-error analysis for constitutional errors.[3]  In its supplemental brief, Respondent argues that Claim 3 is procedurally defaulted because Baxter did not present the federal constitutional issue to the TCCA on direct appeal.  Petitioner posits that he raised the constitutional issue in his direct appeal brief.  He further asserts that Respondent waived the procedural-default affirmative defense by not raising it in the Response.  Upon review of the submissions in the present case and the relevant portions of the state-court record, the Court concludes that Petitioner is not entitled to relief on Claim 3.

### A. Procedural Background

As it appeared in the Petition, Claim 3 asserted the following:

> **GROUND THREE**:  State Trial Court abused its discretion by allowing admission of hearsay evidence violating *Crawford v. Washington*.
> (a) **Supporting facts**[:]
> The TCCA held this claim to be harmless error.  The TCCA dodged the federal/constitutional harm analysis under *Chapman v. California*.  The TCCA's opinion omits any federal harm analysis under *Chapman* error."

(ECF No. 1 at 8.)

---

[3]  "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.'"  *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (quoting U.S. Const. amend. VI).  The "guarantee applies to both federal and state prosecutions."  *Id.* (citing *Pointer v. Texas,* 380 U.S. 400, 406 (1965)).  In *Crawford*, the Supreme Court held that, "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability [of the witness] and a prior opportunity for cross-examination."  *Id.* at 68.  A violation of the defendant's right to confront witnesses is subject to harmless error review on direct appeal.  *England v. Hart*, 970 F.3d 698, 713 (6th Cir. 2020) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).  In *Chapman*, the Supreme Court held that, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  *Id.*  The *Chapman* standard is "defendant-friendly."  *England*, 970 F.3d at 713.

By order dated February 2, 2021, the Court determined that Baxter's presentation of Claim 3 was "somewhat confusing," rendering the scope of the claim uncertain. (ECF No. 41 at 2.)   The Court found that, on the one hand, "it appears from the Petition that Baxter is challenging the court's ruling only as to the judge's statement" because "the TCCA conducted a harmless-error analysis only with respect to [that] statement[.]"   (*Id.*)   On the other hand, "Petitioner's memorandum in support of the Petition, which references numerous theories not set forth in the Petition, includes a challenge to the TCCA's ruling regarding the admission of defense counsel's statement and also presents arguments based on state evidentiary law."   (*Id.*) The Court noted that the confusion generated by Petitioner's submissions might have affected Respondent's response to the claim.   (*Id.*)   The Court further determined that "it appear[ed] that Petitioner might not have 'fairly presented' to the TCCA the federal contours of Claim 3."   (*Id.*)

For all of these reasons, Petitioner was directed to file a supplemental brief clarifying the scope of Claim 3, and he was given the opportunity to address the probable procedural default. The Court ordered Respondent to file a supplemental response to Petitioner's supplemental brief, directing that, "[if] Respondent concludes that the issues were exhausted or chooses to waive that affirmative defense, his supplemental brief should address the merits of Claim 3."   (*Id.*) Petitioner was allowed to file a supplemental reply.

The Clerk received Petitioner's supplemental brief on February 25, 2021.  (ECF No. 43.) In the document, Petitioner insists that Claim 3 is not procedurally defaulted because he fairly presented the constitutional issue to the TCCA.[4]  He maintains that the Court should, therefore,

---

[4]  Petitioner's supplemental briefs have done little, if anything, to clarify Claim 3.  Baxter does not expressly state that the claim includes a challenge to defense counsel's statement.  Although he references both Judge Morgan's and defense counsel's statements, he still limits his argument to the assertion that "[t]he TCCA applied harmless-error review" in contravention of "clearly established federal law[.]"   (ECF No. 43 at 5-6.)  As the Court noted in its February 2, 2021

address his argument that "the TCCA['s] harmless-error decision was contrary to and an unreasonable application of clearly established federal law, as determined by the Supreme Court's decision in *Chapman*; and, resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court[.]" (*Id.* at 5-6.) In his supplemental response, Respondent argues that Claim 3 is procedurally defaulted because there was nothing in Petitioner's direct appeal brief to alert the TCCA to the confrontation clause issue. (ECF No. 45.) Petitioner filed a supplemental reply, asserting that Respondent waived the procedural-default affirmative defense by failing to present it in his original Response. (ECF No. 46.)

### B.  Procedural Default

As indicated above, a habeas petitioner must "fairly present[]" his federal claim to the state courts. *Boerckel*, 526 U.S. at 848. "To 'fairly present' a federal claim, the petitioner must plead both a factual and legal basis for the claim." *Katt v. Lafler*, 271 F. App'x 479, 481–82 (6th Cir. 2008) (quoting *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000)). In assessing whether a petitioner has done so, a court must scrutinize the petitioner's state court filings for

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681.

---

order, the TCCA applied  harmless-error analysis only as to the trial court's admission of the judge's statement.  Therefore, the scope of Claim 3 remains unclear.  However, the Court will assume that Petitioner means to assert that the trial court violated his right to confront witnesses when it admitted into evidence both Judge Morgan's and defense counsel's transcribed comments from the June 13 hearing, and that neither  error was harmless under *Chapman*.

Baxter insists that he fairly presented his confrontation clause issue to the TCCA in his direct appeal brief.  He points out that he cited *State v. Forbes*, 918 S.W. 2d 431 (Tenn. Crim. App. 1995), which recognized that "[a] denial of the right to an effective cross examination is 'constitutional error of the first magnitude' and amounts to a violation of the basic right to a fair trial."  *Forbes*, 918 S.W.2d at 450 (quoting *State v. Hill,* 598 S.W.2d 815, 819 (Tenn. Crim. App.1 980) (quoting, *Davis v. Alaska,* 415 U.S. 308, 318 (1978)).  Respondent argues that Petitioner's appellate brief cited to page 449 of *Forbes*, not page 450, and it did so only for the applicable standard of review.

A review of the direct appeal brief shows that Baxter did not fairly present to the TCCA a challenge to the admission of Judge Morgan's and defense counsel's statements on the grounds that his federal constitutional right to confront the witnesses was violated.  Instead, he presented the issue only as one arising under state evidentiary law.  His "STATEMENT OF ISSUES PRESENTED FOR REVIEW" framed the issue thusly: "Whether the Trial Court committed reversible error when it allowed into evidence a hearsay statement by the judge and by the public defender from a prior hearing?"  (ECF No. 26-9 at 4.)  His argument, set forth below, related only to the application of Tenn. R. Evid. 801 and 802 and the proper standard of review under state law, as set forth in *Forbes*:

> Rule 801 of the Tennessee Rules of Evidence defines hearsay as, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Rule 802 of the Tennessee Rules of Evidence states that, "Hearsay is not admissible except as provided by these rules or otherwise by law."

> The decision to admit evidence is in the discretion of the trial court, and only an abuse of that discretion will warrant a reversal.  *State v. Forbes*, 918 S.W. 2d 431, 449 (Tenn. Crim. App. 1995).  A court abuses its discretion when it applies an incorrect legal standard or reaches a decision that is illogical or unreasonable and causes an injustice to the complaining party.  *Howell v. State*, 185 S.W. 3d 319, 337 (Tenn. 2006).

Even analyzing the Trial Court's determination on an abuse of discretion standard, the Trial Court erred. The Trial Court's only statement as to the admissibility of these lines was that [they were] "part of the overall record." (Vol. 5 pp. 55) The Trial Court used the incorrect legal standard. The Trial Court did not state whether the statements were or were not out of court statements used to prove the truth of the matter asserted. Further, it did not state any exception to hearsay found.

The inclusion of [the statements] was highly prejudicial to the Defendant. This transcript described some supposed knowledge the Defendant had regarding the timing of the court, which is at the heart of a Failure to Appear charge. Equally harmful is a statement by the Defendant's own attorney that she was expecting him to be there, thus transmuting some kind of knowledge to the Defendant.

(ECF No. 26-9 at 9-10.)

Baxter, thus, did not cite *Forbes* for that decision's federal constitutional analysis. He also did not rely upon federal cases employing constitutional analysis, and it did not allege facts well within the mainstream of constitutional law. Moreover, the issue presented was not phrased in terms of constitutional law and it did not employ terms that would be sufficient to allege a violation of a constitutional right. Notably, the TCCA analyzed and resolved Baxter's challenge to Judge Morgan's and defense counsel's statements only on the basis of state evidentiary law. *See Baxter*, 2014 WL 29102, at *4-6.

Because Claim 3 was not fairly presented to the TCCA and the time for doing so has passed, it is procedurally defaulted. Petitioner has not asserted cause and prejudice to excuse the default or that he has new evidence of his actual innocence.

### C.  Waiver and Merits

"[P]rocedural default 'is not a jurisdictional matter[.]'" *Maslonka v. Hoffner*, 900 F.3d 269, 277 (6th Cir. 2018) (quoting *Trest v. Cain*, 522 U.S. 87, 89 (1997) (internal quotation marks, citation, and alteration omitted)). Therefore, the State is "normally 'obligated to raise and

preserve' any procedural-default defense 'if it is not to lose the right to assert the defense thereafter.'" *Id.* (quoting *Trest*, 522 U.S. at 89). In the present case, Respondent did not assert in his Response that Claim 3, as originally presented in the Petition, was procedurally defaulted. Nevertheless, Petitioner is not entitled to relief on the claim.

With regard to Petitioner's challenge to defense counsel's statement, Respondent did not waive the affirmative defense. As indicated above, the Petition itself gave Respondent no reason to believe that Claim 3 presented that particular challenge. And although Petitioner's discussion of Claim 3 in his memorandum included a *Crawford* challenge to the admission of defense counsel's statement, the Court found in its February 2, 2021, order that the scope of the claim was uncertain enough to warrant supplemental briefing. Therefore, Respondent cannot be said to have waived an affirmative defense to an issue that was not clearly before the Court.

Second, even assuming the Response operated as a waiver of the affirmative defense as it relates to Judge Morgan's remarks, and further assuming that the remarks violated Baxter's right to confront the witness, Petitioner would not be entitled to relief even under de novo review. *See Jackson v. Smith*, 745 F.3d 206, 209 (6th Cir. 2014) ("[C]laims not 'adjudicated on the merits' by the state court are given plenary review by a federal habeas court[.]") Although *Chapman*'s "reasonable doubt" standard applies on direct appeal, federal habeas relief cannot issue unless the alleged error was not harmless under the standard announced in *Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993). *Brecht*, 507 U.S. at 638 (rejecting application of *Chapman*'s harmless-error standard on habeas review of "constitutional error[s] of the trial type").[5] *Brecht* requires "actual prejudice" resulting from the constitutional error. *Id.* at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Actual prejudice is found where "the error had substantial and

_____

[5] The *Brecht* standard applies in federal habeas "whether or not the state court reache[d] the *Chapman* question[.]" *Fry v. Pliler,* 551 U.S. 112, 117 (2007).

injurious effect or influence in determining the jury's verdict." (*Id.* at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The *Brecht* standard is not met in the present case for two reasons.

First, the full context of Judge Morgan's statement suggests that the judge was referring to Baxter's knowledge of the 8:00 a.m. start time, not his knowledge that he was required to appear in court on that day. It is undisputed on the trial record that Judge Morgan's court days commenced at 8:00 a.m., that on June 13 the judge called Baxter's case once and then set it aside pending Baxter's arrival, and that the judge noted the time as "9:15" at the time he ordered the issuance of a capias. (ECF No. 26-8 at 4.) His comment that Baxter "knows the timing" followed his remark that it was 9:15 a.m. and also defense counsel's entreaty that she be allowed to call her client during the recess. (*Id.*)

Second, other evidence submitted to the jury suggested that Petitioner knew he was to return to court on June 13. The judge's assistant and the assistant attorney general testified at trial that it was the judge's practice during arraignments to give each defendant their next court date as they stood at the podium and that they remembered Baxter standing at the podium at his May 9 arraignment. Moreover, the transcript of the arraignment shows that, although the judge directed Baxter to "[s]tep aside and let [the assistant public defender] sign you up," he then directed his comments regarding the next court date expressly to the defendant: "We'll put it for June 13th at 8:00, Mr. Baxter. Be back here then and keep in contact with your attorney, Mr. Baxter, and keep your appointments." (ECF No. 26-7 at 6.) And although Petitioner testified that he did not hear the judge announce the June 13 court date, the jury implicitly found his testimony to be not credible.

At bottom, the alleged error was harmless as the record does not show that Judge Morgan's comments "had substantial and injurious effect or influence in determining the jury's verdict."  Claim 3 is **DENIED**.

## V.      Claim 4A

Petitioner asserts that trial counsel was ineffective by "fail[ing] to subpoena witnesses and evidence for trial."  (ECF No. 1 at 10.)  Respondent argues that the claim should be dismissed as inadequately pleaded because Petitioner does not identify the individuals he believes counsel should have called at trial or the evidence counsel should have submitted.  In his Reply, Baxter does not provide the missing information, although he insists that "both the state habeas petition and post-conviction petitions clearly identify 'exactly who and what evidence counsel failed to produce.'"  (ECF No. 29 at 20.)

As discussed earlier, a claim of attorney-ineffective-assistance must be supported with specific factual allegations.  Baxter, however, has failed to provide facts in support of Claim 4A. What is more, his general reference in his Reply to his state habeas corpus and post-conviction petitions is inadequate to supply the necessary factual details.  Those pleadings are over forty pages each and are, at times, rambling.  Petitioner makes no effort to identify for the Court the page or paragraph numbers where the specific factual allegations can be found.  It is not the Court's job to ferret-out the necessary factual details from Petitioner's state pleadings. Therefore, Baxter's failure to identify putative witnesses or evidence in support of Claim 4A subjects the claim to dismissal on the ground that it is not well-pleaded.

It may be that Petitioner means to assert that the TCCA unreasonably rejected his claim that counsel was ineffective for failing to call witnesses and to present evidence that no criminal summons was issued.  The argument, however, is without merit.

In his post-conviction appeal, Baxter argued that counsel was ineffective by failing to "subpoena witnesses [and] present evidence that the Clerk's Office failed to issue a criminal summons after [Petitioner's] failure to appear."  (ECF No. 26-24 at 13.)  In rejecting the claim, the TCCA first identified *Strickland*'s standards as governing its analysis of the issue.  *Baxter*, 2017 WL 3822903, at *6.  Regarding Baxter's assertion about counsel's failure to call witnesses, the court determined that Petitioner did "not specify in his argument who trial counsel should have called as a witness or what any alleged witnesses would have testified to," and "did not present any . . . witnesses at the post-conviction hearing."  *Id.* at *7.  Finding that Petitioner had failed to carry his burden of showing that counsel performed deficiently and that he was prejudiced by counsel's conduct, the TCCA concluded that "Petitioner [was] not entitled to any relief on this issue."  *Id.*

Regarding the claim that counsel should have submitted evidence that no criminal summons was issued on the failure to appear, the TCCA noted that "Petitioner [had] not cited to any authority that requires the circuit court clerk's office to use a criminal summons when a defendant fails to appear in court."  *Id.*  Based on the post-conviction hearing testimony of counsel and "Circuit Court Clerk Kathy Blount," the court found that "the circuit judges 'never' issue a criminal summons for a defendant who fails to appear in court."  *Id.*  Instead, "when a defendant in Madison County Circuit Court fails to appear in court on a specific date, the judge orders a *capias* to be issued by the clerk's office."  *Id.*  The TCCA concluded that Petitioner therefore did not establish that counsel provided ineffective assistance by failing to submit evidence that a criminal summons had not issued.  *Id.*

Because the TCCA correctly identified *Strickland*'s standards and applied them to the facts of Petitioner's case, its ruling is not "contrary to" controlling Supreme Court law.  *See Williams*, 529 U.S. at 406.

The state appellate court's decision is also not based on an unreasonable determination of the facts or an unreasonable application of *Strickland*'s standards to the facts.  Petitioner does not identify any clear and convincing evidence to undermine the state court's factual findings. Indeed, a review of the post-conviction hearing transcript shows that, as the TCCA found, Baxter did not call any individuals to testify at the hearing.  (ECF No. 26-23.)  He therefore failed to establish that the testimonies of the unidentified putative witnesses would have been material to the defense.  The transcript also supports the TCCA's finding that it is not the practice of the circuit court to issue criminal summonses for failures to appear.  (*Id.* at 10, 19-20, 32.)  Therefore, Counsel's failure to submit evidence that no such summons was issued cannot amount to deficient performance and cannot be said to have resulted in prejudice to his client. Based on this record, the state appellate court's conclusion that counsel did not provide ineffective assistance was not an unreasonable application of *Strickland*'s precepts.

For these reasons, Claim 4A is **DISMISSED** as inadequately pleaded, and is otherwise without merit.

## VI.     Claims 4B, 4C, 4D, and 4E

Petitioner asserts that counsel was ineffective in failing to exercise peremptory strikes (Claim 4B), object to the prosecution's case (Claim 4C), object to discriminatory enforcement (Claim 4D), and contest the prosecution's false narrative at trial (Claim 4E).  Respondent maintains that the claims are inadequately pleaded and procedurally defaulted.  Petitioner posits that post-conviction counsel's alleged ineffective assistance is cause to excuse the defaults.

As Respondent correctly points out, the claims are subject to dismissal because they are not well-pleaded. Baxter does not support his general allegations with factual details that, if assumed to be true, would show that counsel performed deficiently and that his conduct prejudiced Petitioner. It is worth noting that, at the time he filed his Reply, he was on notice of the pleading deficiency but did not offer more detailed allegations. The claims are therefore subject to dismissal on this ground.

The claims are also procedurally defaulted. With regard to Claims 4B, 4C, and 4E, Petitioner did not raise them at any level of his post-conviction proceedings, and the time for doing so has passed. His assertion that post-conviction counsel's alleged ineffective assistance is cause to excuse the default is unavailing. To lift the procedural bar pursuant to *Martinez*, Baxter must demonstrate that the ineffective assistance claims are "substantial." *Martinez*, 566 U.S. at 14. A claim is "substantial" if it has "some merit." *Id.* Petitioner cannot meet that threshold in the absence of specific factual allegations to support the claims.

With regard to Claim 4D, Petitioner litigated the issue in the post-conviction trial court (*see* ECF No. 26-23 at 29-30, 64-65), but he abandoned it on appeal (*see* ECF No. 26-24 at 13). He now argues that post-conviction appellate counsel's alleged ineffective assistance is cause to excuse the default. The argument is unavailing because, as discussed earlier, *Martinez* does not apply to excuse a procedural default that occurs on post-conviction appeal.

Because Petitioner procedurally defaulted Claims 4B, 4C, 4D, and 4E, and has not shown cause and prejudice to excuse the defaults, the claims are **DISMISSED.**

For all of these reasons, the Petition is **DENIED**. Judgment shall be entered for Respondent.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[6]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: May 19, 2021.

---

[6] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.